# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

ALAN D. HALPERIN AND EUGENE I.      )
DAVIS AS CO-TRUSTEES OF THE        )
APPVION LIQUIDATING TRUST         )
                                           )
               Plaintiff,        )
        v.                    )
                                           )   Case No. 19-CV-1561-WCG
                                         )
MARK R. RICHARDS, *et al.,*           )
                                         )
            Defendants.     )
                                         )

## MEMORANDUM IN SUPPORT OF
## <u>ARGENT TRUST COMPANY'S MOTION TO DISMISS</u>

# Table of Contents

I.     INTRODUCTION ................................................................................................. 1

II.    RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY................ 2

       A.    Relevant Factual Allegations in the Second Revised Amended Complaint .......... 2

       B.    Procedural History ..................................................................................... 4

III.   ARGUMENT ..................................................................................................... 5

       A.    The Aiding and Abetting Claim Against Argent Is Preempted by ERISA.............. 5

             1.    ERISA Preemption Background .................................................... 5

             2.    The Aiding and Abetting Claim is Preempted by ERISA ......................... 8

       B.    The Aiding and Abetting Claim Should Alternatively be Dismissed For
             Failure to State a Claim............................................................................. 12

       C.    Joinder to Arguments of Co-Defendants ............................................... 17

IV.    CONCLUSION................................................................................................ 17

## Table of Authorities

**Cases**

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) .................................................................................... 2

*Aetna Health, Inc. v. Davila*,
  542 U.S. 200 (2004) ..................................................................................... 6, 10

*Antioch Co. Litig. Tr. v. Morgan*,
  456 B.R. 791 (Bankr. S.D. Ohio 2011) ............................................................. 11-12

*Arndt v. AON Hewitt Benefit Payment Servs., LLC*, No. 15-C-750, 2015 WL 7313392,
  2015 U.S. Dist. LEXIS 156553 (E.D. Wis. Nov. 19, 2015) ............................... 9-10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................... 12, 16

*AT&T v. Empire Blue Cross & Blue Shield*, No. 93-cv-1224, 1994 WL 16057794,
  1994 U.S. Dist. LEXIS 21091 (D.N.J. July 19, 1994) .................................... 10-11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................... 12, 16

*Brugos v. Nannenga*, No. 2:03-cv-547,
  2005 U.S. Dist. LEXIS 31148 (N.D. Ind. Dec. 5, 2005) ...................................... 10

*Carter v. San Pasqual Fiduciary Tr. Co.*, No. 15-cv-01507,
  2016 U.S. Dist. LEXIS 163017 (C.D. Cal. Apr. 18, 2016) .................................... 11

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Neurobehavioral Assocs., P.A.*,
  53 F.3d 172 (7th Cir. 1995) ................................................................................ 7

*Cumming v. Edens*, No. 13007-VCS, 2018 WL 992877,
  2018 Del. Ch. LEXIS 54 (Del. Ch. Feb. 20, 2018) ...................................... 13, 14

*In re Dole Food Co., Stockholder Litig.*, No 9079-VCL,
  2015 Del. Ch. LEXIS 223 (Del. Ch. Aug. 27, 2015) ......................................... 13

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*,
  538 F.3d 594 (7th Cir. 2008) ............................................................................. 10

*Gobeille v. Liberty Mut. Ins. Co.*,
  136 S. Ct. 936 (2016) ................................................................................... 7, 8

*Healy v. Metro. Pier & Exposition Auth.*,
  804 F.3d 836 (7th Cir. 2015) ............................................................................. 6

*Hecker v. Deere & Co.*,
  496 F. Supp. 2d 967 (W.D. Wis. 2007) ............................................................. 3

*Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*,
    623 F. Supp. 2d 568 (D.N.J. 2009) ...................................................................... 10

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990) ............................................................................... 6, 7, 8

*Jass v. Prudential Health Care Plan*,
    88 F.3d 1482 (7th Cir. 1996) ................................................................................ 7

*Lawrence v. Bank of Am., N.A.*,
    455 F. App'x 904 (11th Cir. 2012) ..................................................................... 16

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ................................................................................. 13

*Matthew v. Laudamiel*, No. 5957, 2015 WL 5723985,
    2015 Del. Ch. LEXIS 247 (Del. Ch. Sept. 28, 2015) .................................... 12-13

*McFall v. Stacy & Witbeck, Inc.*, No. 14-cv-04150-JSC, 2016 WL 6248882,
    2016 U.S. Dist. LEXIS 148399 (N.D. Cal. Oct. 26, 2016) ................................. 16

*McLemore v. Regions Bank*, Nos. 08-cv-0021, 08-cv-1003, 2010 WL 1010092,
    2010 U.S. Dist. LEXIS 25785 (M.D. Tenn. Mar. 18, 2010) ............................... 11

*Menkes v. Prudential Ins. Co. of Am.*,
    762 F.3d 285 (3d Cir. 2014) ............................................................................ 6, 8

*In re Mortg. Elec. Registration Sys., Inc.*,
    754 F.3d 772 (9th Cir. 2014) .............................................................................. 17

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995) .............................................................................................. 8

*Nat'l Sec. Sys., Inc. v. Iola*,
    700 F.3d 65 (3d Cir. 2012) ................................................................................... 8

*Nymex S'holder Litig. v. N.Y. Mercantile Exch.*, Inc., Nos. 3621-VCN, 3835-VCN,
    2009 Del. Ch. LEXIS 176 (Del. Ch. Sept. 30, 2009) ........................................ 15

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987) ............................................................................................... 7

*RBC Capital Mkts. LLC v. Jervis*,
    129 A.3d 816 (Del. 2015) ............................................................................ 13, 14

*In re Rural Metro Corp. Stockholders Litig.*,
    88 A.3d 54 (Del. Ch. 2014) ............................................................................... 14

*In re Santa Fe Pac. Corp. S'holder Litig.*,
    669 A.2d 59 (Del. 1995) .................................................................................... 15

Case 1:19-cv-01561-WCG   Filed 12/16/19   Page 4 of 23   Document 19

*Scherr v. Marriott Int'l, Inc.*,
   703 F.3d 1069 (7th Cir. 2013) ................................................................ 4

*Schuppel v. Teamsters "General" Local Union No. 200*, No. 07C0853,
   2008 U.S. Dist. LEXIS 68054 (E.D. Wis. May 2, 2008) ........................ 2

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983) ................................................................................. 7

*Singh v. Attenborough*,
   137 A.3d 151 (Del. 2016) ....................................................................... 14

*Stewart v. Wilmington Tr. SP Servs., Inc.*,
   112 A.3d 271 (Del. Ch. 2015) ............................................................... 16

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) .................................................................. 6

*In re Xura, Inc. Stockholder Litig.*, No. 12698-VCS, 2018 WL 6498677,
   2018 Del. Ch. LEXIS 563 (Del. Ch. Dec. 10, 2018) ........................... 13

*Zayed v. Associated Bank, N.A.*,
   779 F.3d 727 (8th Cir. 2015) ................................................................. 16

## Federal Rules and Statutes

Fed. R. Civ. P. 12(b)(6) ..................................................... 2, 3, 4, 6, 15

26 U.S.C. § 401 .................................................................................... 8

26 U.S.C. § 409 .................................................................................... 5

26 U.S.C. § 4975 .................................................................................. 5

29 U.S.C. § 1104 ............................................................................. 5-6, 12

29 U.S.C. § 1144 ................................................................................ 6, 7

# I.     INTRODUCTION

Argent Trust Company ("Argent") provides trustee services to pension and retirement plans, including ESOPs. In 2014, Appvion, Inc. ("Appvion") appointed Argent the trustee of the Appvion Retirement Savings and Employee Stock Ownership Plan ("Appvion ESOP"). In the sole claim before this Court asserted against Argent (Count V), Plaintiff alleges that Argent aided and abetted management in harming the Debtors by overvaluing the stock of Paperweight Development Corporation (Appvion's parent company) held in the Appvion ESOP. Argent was required to value the Paperweight Development Corporation stock twice a year under the Appvion ESOP and Argent's engagement and trust agreements with Appvion. Plaintiff makes these allegations even though Argent valued the Paperweight Development Corporation stock materially lower than the Appvion ESOP's predecessor trustees had, had nothing to gain by virtue of this alleged wrongdoing, and as a matter of law owed no duties to anyone other than the Appvion ESOP.

That aside, Plaintiff's sole claim against Argent fails as a matter of law for the following two reasons:

1.     The aiding and abetting claim is preempted by ERISA. ERISA preempts state law as it relates to an employee benefit plan like the Appvion ESOP. The purpose of ERISA is to have a single body of federal law govern employee benefit plans and the conduct of ERISA fiduciaries like Argent, and not a hodgepodge of 50 states' trust and tort laws. Here, the Plaintiff uses state common law as the benchmark for determining whether Argent properly valued the stock held in the Appvion ESOP. This valuation was required by the Appvion ESOP (as Plaintiff acknowledges) and applicable law, and is a core fiduciary function, the performance of which is central to proper ESOP administration. Plaintiff's challenge to Argent's work for the Appvion ESOP seeks to measure Argent's fiduciary conduct under state law in just the way that ERISA preempts.

2.     The aiding and abetting claim should also be dismissed because it fails to allege

sufficient facts to state a claim. Plaintiff did not and cannot allege the requisite "knowing

participation" by Argent. Plaintiff also did not and cannot allege that the trustee and valuation

services Argent provided to the Appvion ESOP constitute sufficient assistance to the underlying

alleged tortfeasors to state an aiding and abetting claim.

The Court should therefore dismiss Argent from this lawsuit pursuant to Federal Rule

12(b)(6).

## II.     RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

### A.     Relevant Factual Allegations in the Second Revised Amended Complaint

As it must, the allegations in the Second Revised Amended Complaint (Doc. 2) are deemed

to be true solely for the purposes of this motion.

In late 2001, more than 90% of the Debtors' employees invested certain funds to allow

Appvion's ESOP to purchase 100% of the equity of Paperweight Development Corporation

("PDC"), the holding company that owned Appvion. (Second Revised Amended Complaint

("SAC") ¶¶ 66-69.) In the years following the 100% ESOP transaction, PDC's share price rose

significantly, from approximately $10 per share to a high of $33.41 per share in 2008. (SAC Figure

10, p. 53.)

Under ERISA and the terms of the Appvion ESOP and Trust Agreement, the ESOP trustee

was required to value PDC stock twice a year. (SAC ¶¶ 89, 100.)[1] This "biannual [Fair Market

---

[1] See **Ex. 1** (Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, effective January 1, 2014, at § 1.80); **Ex. 2** (Amended and restated trust agreement for the Appleton Papers Inc. Employee Stock Ownership Trust, effective as of Apr. 1, 2013) *and* **Ex. 3** (Appvion, Inc. Employee Ownership Trust, as amended and restated effective Aug. 3, 2015). The Court may consider these documents on this Rule 12(b)(6) Motion because they are referenced in, and central to, the Revised Second Amended Complaint (*See, e.g.*, SAC ¶¶ 89, 92-95). *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim"); *see also Schuppel v. Teamsters "General" Local Union No. 200*, No. 07C0853, 2008 U.S. Dist. LEXIS 68054, at *4 (E.D. Wis. May 2, 2008) (considering collective bargaining agreement, the Plan, and related

2

Value] Determination served several crucial functions related to the administration of the ESOP." (*See* SAC ¶¶ 112-113.) Argent was the successor to the successor trustee of the Appvion ESOP: Argent was retained in 2014 (SAC ¶ 92) to replace Reliance Trust Company which had replaced the original trustee, State Street Global Advisors. (SAC ¶ 94.)[2] Reliance had used the leading professional valuation firm of Stout Risius Ross ("Stout") to assist Reliance in valuation of the PDC stock in the Appvion ESOP (SAC ¶ 102.) Argent continued to use Stout when Argent became trustee in 2014. (SAC ¶ 108.)

The first value determination of PDC stock for which Argent was responsible was the June 2014 valuation. That valuation was a nickel per share higher than the one Reliance reached six months prior, about 10% lower than the valuation a year earlier, and half of the all-time high. The second valuation Argent performed was the December 2014 valuation, which dropped the PDC share price nearly a third, to $11 per share.

Plaintiff challenges the methodologies that Stout, as Argent's financial advisor, used in connection with the fair market value determinations that Argent was required to make and deliver bi-annually to the Appvion ESOP. Indeed, the bulk of the Second Revised Amended Complaint consists of valuation methodology challenges. (*See, e.g.*, SAC ¶¶ 200-347.) The only act of alleged wrongdoing that Plaintiff has asserted against Argent—alleged flaws in valuation of PDC's common stock—occurred exclusively in Argent's "role as the ESOP Trustee." (SAC ¶ 413.) Plaintiff seeks to recover a monetary judgment against Argent for state law consequential and punitive damages. (*See* SAC at ¶ 414; Prayer for Relief, (e), pg. 134.)

---

documents that were "central" to the case at Rule 12(b)(6) stage); *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 972 (W.D. Wis. 2007) (considering "the plan documents, the SPDs, and the prospectuses" because they "are central to the claim and form the basis for the complaint.").

[2] **Ex. 4** (Apr. 1, 2013 Trustee engagement letter between Reliance Trust Company and Appleton Papers, Inc.) and **Ex. 5** (Trustee engagement letter between Argent and Appvion as of May 26, 2015). The Trustee engagement letter effective as of April 1, 2013 was initially applicable to Argent based on the 2014 sale of Reliance to Argent.

### B.    Procedural History

On October 1, 2017, Appvion, PDC, and their affiliated companies (the "Debtors") filed bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). Pursuant to the Plan of Liquidation in the Delaware Bankruptcy Court, the Appvion Liquidating Trust was created. The Liquidating Trust is generally permitted to pursue certain Litigation Claims of the Debtors. The Liquidating Trust is not permitted under the Plan of Liquidation or governing law to pursue claims arising under ERISA.

On November 30, 2018, the Co-Trustees of the Appvion Liquidating Trust ("Plaintiff") filed this lawsuit in the Delaware Bankruptcy Court against certain former officers and directors of Appvion (the "Former D&O Defendants"), Stout, and Argent—docketed as Adversary Proceeding No. 18-50955 (the "Adversary Action"). (Del. Adv. Doc. 1.)

Just days prior to the filing of the Adversary Action in the Delaware Bankruptcy Court, the ESOP Administrative Committee for the Appvion ESOP filed a separate lawsuit in this Court against all of the defendants to the Adversary Action and about 30 additional individuals or entities—E.D. Wisc. No. 18-cv-01861-WCG (the "ERISA Litigation"). The ERISA Litigation contains 19 causes of action, including six against Argent. Among the claims against Argent are claims for violations of ERISA. An important aspect of the claims in the ERISA Litigation is the allegation that the ESOP trustees overvalued the PDC stock. Like here, the Appvion ESOP seeks to hold Argent, as ESOP trustee, liable for some of these alleged overvaluations. (*See, e.g.*, Amended Compl., No. 18-cv-01861-WCG, Doc. 77 at ¶¶ 516-539.)[3]

On January 29, 2019, the Defendants filed motions to dismiss the Adversary Action in the Delaware Bankruptcy Court, or in the alternative, to transfer venue over Counts I-VIII to this

---

[3] The Court may take judicial notice of the pleadings in the ERISA Litigation on a Rule 12(b)(6) motion to dismiss. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

Court, where the related ERISA Litigation had been first-filed. (Del. Adv. Docs. 36-43.) Plaintiff subsequently filed a Second Amended Complaint and Revised Second Amended Complaint. (Del. Adv. Docs. 86-88, 101-102.) The Parties stipulated that Defendants' previously filed motions to dismiss or transfer would apply to the Revised Second Amended Complaint. (Del. Adv. Doc. 111.)

On October 23, 2019, the Delaware Bankruptcy Court transferred Counts I-VIII of the Adversary Action to this Court, and denied other aspects of Defendants' motions. (Del. Adv. Docs. 112-113; Doc. 1-1.) The Delaware Bankruptcy Court declined to consider certain arguments raised in the Defendants' motions to dismiss Counts I-VIII, noting that "[b]ecause the Court is transferring those counts, there is no need to address Defendants' arguments for dismissal of these counts of the Complaint." (Del. Adv. Doc. 112 at 21.)

On November 25, 2019, this Court entered the Parties' Joint Stipulation setting forth a briefing schedule for the re-filing of Defendants' motions to dismiss the transferred claims (Counts I-VIII) on the grounds that the Delaware Bankruptcy Court declined to consider. (Doc. 17.) The sole transferred claim asserted against Argent is Count V, a state law tort cause of action for aiding and abetting the Former D&O Defendants' alleged breaches of fiduciary duty.

III.   **ARGUMENT**

A.   **The Aiding and Abetting Claim Against Argent Is Preempted by ERISA**

1.   **ERISA Preemption Background**

An Employee Stock Ownership Plan ("ESOP") is a defined contribution plan under 26 U.S.C. § 4975(e)(7) that allows participants to make investments in employer securities. 26 U.S.C. § 409(l)(1). As such, an ESOP is an individual account plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA § 3(34) (29 U.S.C. § 1002(34)). "Argent served as the ESOP Trustee" (SAC ¶ 412) of the Appvion ESOP and was an ERISA fiduciary as defined by ERISA section 3(21) (29 U.S.C. § 1002(21)). Argent's duties were therefore governed

5

exclusively by ERISA, to be exercised "solely in the interest of the [ESOP] participants and beneficiaries." ERISA § 404(a) (29 U.S.C. § 1104(a)). Argent accordingly owed a duty only to the Appvion ESOP and not to the Debtors, their boards of directors, or company management.

ERISA is a "comprehensive legislative scheme," which includes an "integrated enforcement mechanism." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004). Civil enforcement of the duties of an ERISA fiduciary like Argent is available only pursuant to ERISA section 502(a) (29 U.S.C. § 1132(a)). That section permits only participants, beneficiaries, and other ERISA fiduciaries to challenge fiduciary conduct, seek equitable relief, or assert claims for breach of fiduciary duty. Plaintiff is none of these.

Through ERISA, Congress sought "to provide a uniform regulatory regime over employee benefit plans." *Id.* "To this end, ERISA includes expansive" preemption provisions, "which are intended to ensure that employee benefit plan regulation" is an "exclusively federal concern." *Id.* (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). A principal way of enforcing this Congressional intent is ERISA's express preemption clause (section 514(a)) that provides ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Preempted claims should be dismissed with prejudice in response to a Rule 12(b)(6) motion. *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 840-41 (7th Cir. 2015); *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 425 (7th Cir. 2011); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 295-96 (3d Cir. 2014).

The Supreme Court has noted that section 514(a) "is conspicuous for its breadth" and employs "deliberately expansive language." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (internal quotations and citations omitted). When analyzing express preemption under section 514(a), the "key . . . is found in the words 'relate to.'" *Id.* A "law 'relates to' an employee

benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans or the effect is only indirect." *Ingersoll-Rand Co.*, 498 U.S. at 139 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)); *see also Cent. States., Se. & Sw. Areas Health & Welfare Fund v. Neurobehavioral Assocs., P.A.*, 53 F.3d 172, 174 (7th Cir. 1995) ("The structure and legislative history" of ERISA "indicate that the words 'relate to' are intended to apply in their broadest sense.")

"[T]o underscore its intent that section 514(a) be expansively applied, Congress used equally broad language in defining the 'State law' that would be pre-empted." *Ingersoll-Rand Co.*, 498 U.S. at 138-39. Pursuant to section 514(c)(1), the "term 'State law' includes all laws, decisions, rules, regulations or other State action having the effect of law." 29 U.S.C. § 1144(c)(1); *see also Pilot Life Ins. Co.*, 481 U.S. at 47-48 (noting that common-law causes of action like the Plaintiffs' aiding and abetting claim that "relate to" an employee benefit plan fall under ERISA's express preemption clause).

As relevant here, ERISA preempts a state law or cause of action "that has an impermissible 'connection with' ERISA plans, meaning a state law that 'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)); *see also Ingersoll-Rand Co.*, 498 U.S. at 138-40 (finding preemption under section 514(a) of a state law claim that makes "specific reference to, and indeed is premised on, the existence of a pension plan").[4] Because ERISA establishes the requirements for employee benefit plans, the

---

[4] *See also Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1492-94 (7th Cir. 1996) (affirming preemption under Section 514(a) of state law claims dependent on existence of plan and related to administration of plan);

standards of conduct for maintaining and administering employee benefit plans, and the remedies and sanctions for violations of those requirements and standards, "state laws providing alternative enforcement mechanisms" have an impermissible connection with ERISA and are therefore preempted. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995) (citing *Ingersoll-Rand Co*., 498 U.S. at 142).

### 2. The Aiding and Abetting Claim is Preempted by ERISA

The aiding and abetting claim against Argent in Count V is preempted under the foregoing principles. The Plaintiff's allegations "relate to" a benefit plan because they challenge Argent's conduct in discharging its duties as ESOP Trustee, which are governed by ERISA. The only act of alleged wrongdoing that the Plaintiff has asserted against Argent—alleged flaws in valuation of PDC's common stock—occurred in Argent's "role as the ESOP Trustee." (SAC ¶ 413.) In fact, Plaintiff acknowledges that "the ESOP required the ESOP Trustee" to make a determination of fair market value of the shares twice a year (SAC ¶ 89) and therefore the valuation work directly impacts and is required by the Appvion ESOP.[5]

Accordingly, Plaintiff's claim against Argent impermissibly seeks to use state law to challenge Argent's work in connection with valuation, a "central matter of plan administration." *Gobeille*, 136 S. Ct. at 943. Again, Plaintiff acknowledges as much, alleging that "the biannual [Fair Market Value] Determination served several crucial functions related to the administration of the ESOP," and were mandated by the Appvion ESOP and Trust Agreements. (SAC ¶ 112.) Indeed, these fair market value determinations were used for the most basic and central parts of

---

*Menkes*, 762 F.3d at 293-96 (affirming preemption under section 514(a) of state law claims "premised on the existence of the plan"); *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83-84 (3d Cir. 2012) (affirming preemption under section 514(a) of state law claims "premised on the existence of the plans" and challenging conduct related to "administering the plans").

[5] Where stock in an ESOP is not publicly traded, ERISA requires an independent valuation expert to perform a valuation of the stock at least once a year. *See* 26 U.S.C. § 401(28)(C). Argent hired Stout for this purpose.

plan administration, including in connection with "contributions to the ESOP," "distributions to ESOP participants," and management and "estimate [of] the upcoming repurchase obligations under the ESOP." (SAC ¶ 113; *see also* Del. Adv. Doc. 77 at 30, 31) (admitting "the valuations of PDC stock were undoubtedly central to the administration of the ESOP.") It is hard to imagine matters more central to plan administration. *See, e.g., Arndt v. AON Hewitt Benefit Payment Servs., LLC*, No. 15-C-750, 2015 WL 7313392, 2015 U.S. Dist. LEXIS 156553, at *7 (E.D. Wis. Nov. 19, 2015) (Griesbach, C.J.) (dismissing state law cause of action as preempted under Section 514(a) because "the claim here is that an error in administering an ERISA plan led the Plaintiff to suffer damages").[6]

That Plaintiff is attempting to use state law improperly as an alternative enforcement mechanism is not a hypothetical concern. As noted above, a few days before the Adversary Action was filed, Argent was sued in this Court with claims and allegations that directly overlap—word-for-word in some instances—and are duplicative of the allegations in this matter. The plaintiff in the ERISA Litigation is the ESOP Administrative Committee for the Appvion ESOP and has asserted claims for violations of four different ERISA sections. (*See* E.D. Wisc. No. 18-cv-01861-WCG, Doc. 77.) As the Delaware Bankruptcy Court observed in its Opinion transferring Counts I-VIII of the Adversary Action to this Court, the ERISA Litigation contains claims based on "the overvaluation of PDC common stock" (Doc. 1-1 at 5) and "facts and issues that are similar, if not duplicative, to those raised here." (Doc. 1-1 at 20.)

ERISA section 514(a) was designed to prohibit this exact thing—namely, subjecting an ERISA fiduciary to state laws with different standards and enforcement mechanisms for the very same conduct governed by ERISA. *See, e.g.*, *Arndt*, 2015 U.S. Dist. LEXIS 156553, at *7 (noting

---

[6] Pursuant to L.R. 7(j), copies of all unreported decisions cited in this Memorandum are attached as **Ex. 6**.

"Congress intended" that ERISA would provide "the *exclusive* means of obtaining redress for matters relating to benefit plans" and dismissing as preempted a state law claim that, like Count V here, sought to recover beyond what ERISA provides "under state law consequential damages theories"); *Brugos v. Nannenga*, No. 2:03-cv-547, 2005 U.S. Dist. LEXIS 31148, at *13-15 (N.D. Ind. Dec. 5, 2005) (finding state law claim against ERISA fiduciary was preempted because it was "premised on the same facts" as an ERISA breach of fiduciary duty claim and, like Count V here, also sought punitive damages which "conflicts with Congress's intent when it enacted . . . 'the limited remedies available under ERISA'") (quoting *Davila*, 542 U.S. at 215). Congress's fear of exposing ERISA fiduciaries to a non-uniform set of fiduciary principles with different enforcement mechanisms will be realized here unless Plaintiff's claim against Argent is dismissed.

The analysis does not change because Plaintiff has asserted an aiding and abetting theory of liability. Courts do not focus on the packaging of a plaintiff's complaint but whether, in substance, the claims in the complaint impermissibly seek to regulate ERISA fiduciary conduct. "Obviously, a plaintiff may not evade ERISA's enforcement provisions by characterizing its claims as arising under common law, as such a practice would 'elevate form over substance.'" *Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568, 578 (D.N.J. 2009) (quoting *Davila*, 542 U.S. at 214); *see also Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008) (holding that "[a]rtful pleading on the part of a plaintiff to disguise federal claims by cleverly dressing them in the clothing of state-law theories will not succeed" in avoiding ERISA's preemptive power).

As a result, courts routinely have held that aiding and abetting claims are preempted under ERISA. *See, e.g.*, *AT&T v. Empire Blue Cross & Blue Shield*, No. 93-cv-1224, 1994 WL 16057794, 1994 U.S. Dist. LEXIS 21091, at *80 (D.N.J. July 19, 1994) (holding aiding and

abetting claim was preempted under section 514(a) where plaintiffs asserted fiduciary claims against defendants "based on their alleged status as ERISA plan fiduciaries"); *Carter v. San Pasqual Fiduciary Tr. Co.*, No. 15-cv-01507, 2016 U.S. Dist. LEXIS 163017 (C.D. Cal. Apr. 18, 2016) (holding aiding and abetting claim had an impermissible "connection with" an ERISA plan and was preempted under section 514(a)); *McLemore v. Regions Bank*, Nos. 08-cv-0021, 08-cv-1003, 2010 WL 1010092, 2010 U.S. Dist. LEXIS 25785, at *27-28 (M.D. Tenn. Mar. 18, 2010) (holding that aiding and abetting state law cause of action was "derivative of, and inseparable from" ERISA claims because the aiding and abetting claims "implicate[d] the relationships among traditional ERISA plan entities" and because the claims "constitute[d] an alternate means for the [Bankruptcy] Trustee to pursue a remedy for what is, at its core an ERISA claim.").

A directly analogous case where a court dismissed claims for aiding and abetting on preemption grounds is *Antioch Company Litigation Trust v. Morgan*, 456 B.R. 791 (Bankr. S.D. Ohio 2011). In *Antioch*, like here, a post-confirmation litigation trustee sued directors for breach of state law fiduciary duties. The litigation trustee also sued the institutional ESOP trustee for "aiding and abetting" those breaches of state law fiduciary duty. There, an ESOP fiduciary had also filed a separate lawsuit in a different court on behalf of the ESOP and its participants asserting ERISA claims against the institutional ESOP trustee based upon the same alleged conduct (*Fish, et al. v. GreatBanc Trust Company, et al.*, 09-cv-1668 (N.D. Ill.)), just as the Appvion ESOP Administrative Committee for the Appvion ESOP had done in the Eastern District of Wisconsin, before this case was filed in the Delaware Bankruptcy Court.

On preemption grounds, the *Antioch* court dismissed the ERISA trustee. Noting that an "ESOP trustee holds a single fiduciary duty which runs to the ESOP, not to the company," the Bankruptcy Court found that an "ESOP trustee—when acting within its defined role—has no duty

to a company, but has a single unwavering fiduciary duty to the ESOP's beneficiaries." *Antioch*, 456 B.R. at 836. Because (just like here) the complaint did "not contain a single allegation that" suggested that the ESOP trustee "made any decision, good, bad, or otherwise, outside of its fiduciary role as the ESOP trustee" and because (just like here) the complaint did not indicate that the ESOP trustee "held any position, fiduciary or otherwise, with the Company," the court concluded that the "Complaint fail[ed] because it [sought] to change the role of the ESOP trustee in a way ERISA does not contemplate." *Id*. Accordingly, the court found that the "Complaint's allegations necessarily interfere[d] with the comprehensive ERISA enforcement scheme" and that the claims against the ESOP trustee were preempted. *Id*.

This Court should reach the same result here as in *Antioch*. Argent, as ESOP trustee, had no independent duty to the Debtors, not by contract or imposed by statute or common law. Indeed, ERISA makes clear that Argent's duties ran solely to participants and beneficiaries. 29 U.S.C. § 1104. Therefore, the Debtors (and the Plaintiff asserting the Debtors' claims) have no standing to assert claims under ERISA against Argent and ERISA preempts attempts to regulate the conduct of an ERISA fiduciary by use of state law, as Plaintiff attempts to do here. The Court should dismiss the aiding and abetting claim against Argent in Count V as preempted by ERISA.

### B. The Aiding and Abetting Claim Should Alternatively be Dismissed For Failure to State a Claim

Were the Court to find the aiding and abetting claim against Argent not subject to preemption, Argent should nevertheless be dismissed because Plaintiff fails to plead sufficient facts to state an aiding and abetting claim against Argent under the Supreme Court's *Twombly-Iqbal* line of cases.

Under Delaware law, to prevail on a claim for aiding and abetting, a plaintiff must establish that the defendant "knowingly participated in [the] breach" of the underlying tortfeasor. *Matthew*

*v. Laudamiel*, No. 5957, 2015 WL 5723985, 2015 Del. Ch. LEXIS 247, at *46 (Del. Ch. Sept. 28, 2015); *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).[7] The element of "knowing participation" requires that the alleged aider/abettor provide "substantial assistance" to the primary tortious actor. *In re Dole Food Co., Stockholder Litig.*, No 9079-VCL, 2015 Del. Ch. LEXIS 223, at *138-39 (Del. Ch. Aug. 27, 2015). Delaware courts apply the standard in Section 876(b) of the Restatement (Second) of Torts, stating that an alleged aider/abettor is liable "[f]or harm resulting to a third party from the tortious conduct of another" if that actor "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Id.* at *139 (citing Restatement (Second) of Torts § 876(b) (1979)).

Courts recognize that the knowledge standard is "a stringent one." *In re Xura, Inc. Stockholder Litig.*, No. 12698-VCS, 2018 WL 6498677, 2018 Del. Ch. LEXIS 563, at *38 (Del. Ch. Dec. 10, 2018). Indeed, "[a]n adequate pleading of 'knowing participation' requires a pleading of scienter." *Cumming v. Edens*, No. 13007-VCS, 2018 WL 992877, 2018 Del. Ch. LEXIS 54, at *58 (Del. Ch. Feb. 20, 2018). "To establish scienter, the plaintiff must demonstrate that the aider and abettor had actual or constructive knowledge that their conduct was legally improper," and that he acted with "an illicit state of mind." *Id.* (internal quotations and citation omitted)*.* Put differently, the knowledge element "requires that the third party act[ed] with knowledge that the conduct advocated or assisted constitute[d] such a breach." *Malpiede*, 780 A.2d at 1097. This scienter standard "'makes an aiding and abetting claim among the most difficult to prove.'" *Cumming*, 2018 Del. Ch. LEXIS 54, at *58-59 (quoting *RBC Capital Mkts. LLC v. Jervis*, 129 A.3d 816, 862 (Del. 2015)).

---

[7] Plaintiff's allegations are insufficient to engage in an exhaustive choice of law analysis. Argent will cite Delaware law for its discussion of the aiding and abetting tort but reserves the right to urge that a different substantive law might apply. For the arguments advanced here, there is not a significant difference in the substantive law that might be applied.

The Delaware Supreme Court has also explained that service providers and advisors are provided "a high degree of insulation from liability" for claims of aiding and abetting a tortfeasor's breach of fiduciary duty. *Singh v. Attenborough,* 137 A.3d 151, 152 (Del. 2016). "In essence, the aider and abettor standard affords the advisor a form of protection by insulating it from liability unless it acts with *scienter*." *RBC Capital Mkts.,* 129 A.3d at 875. However, one way in which a plaintiff may show that an advisor acted with scienter is through "evidence of a conflict of interest diverting the advisor's loyalties from its client, such that the advisor . . . is being paid in some fashion [for] something he would not otherwise get in order to assist in the breach of duty." *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54, 100 (Del. Ch. 2014) (internal quotations and citation omitted).

Plaintiff offers *no* allegation that Argent acted with scienter or with an "illicit state of mind." *Cumming*, 2018 Del. Ch. LEXIS 54, at *58. Nor is there any allegation or fair inference that Argent acted with scienter. Indeed, it strains all credulity to think that a professional trustee company—and individuals dedicating their professional careers to service of ESOPs—would purposefully overvalue a stock for no identifiable reason, particularly when they had nothing to gain from the alleged wrongful conduct. *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d at 100. That three different professional, independent trustees with no incentive to do so—along with the leading valuation firm they hired that similarly had no incentive to do so—conspired with a board of directors and management team that changed in composition, over a 15-year period is extraordinarily implausible. In fact, the only plausible and logical inference from the facts alleged is that a professional trustee with no stake in the outcome and no reason for doing so would *not* knowingly engage in wrongful conduct.

14

With no factual support, Plaintiff is left to generalized conclusory statements. Take Paragraph 413 of Plaintiff's Complaint, for example—where Plaintiff alleges, "Rather than urge . . . against the inflation of financial projections, Argent and Stout resolved to merely adjust for assessed riskiness in the discount rate (in the DCF model). As such, Argent knew [other defendants] were . . . breaching their fiduciary duties of care and loyalty by purposeful overvaluing PDC's common stock." (SAC ¶ 413.) Such conclusory statements are insufficient to survive a motion to dismiss. *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 72 (Del. 1995) (affirming dismissal of aiding and abetting claim under Rule 12(b)(6) because plaintiff "fail[ed] to allege any facts" and "merely include[d] a conclusory statement" that defendant had knowledge of the other defendants' tortious conduct); *Nymex S'holder Litig. v. N.Y. Mercantile Exch., Inc.*, Nos. 3621-VCN, 3835-VCN, 2009 Del. Ch. LEXIS 176, at *47 (Del. Ch. Sept. 30, 2009) ("With regard to the third element—knowing participation—conclusory allegations such as 'aiding and abetting defendant had knowledge of the fiduciary defendants' fiduciary duties and knowingly and substantially participated and assisted in the fiduciary defendants' breaches of fiduciary duty . . .' are insufficient as a matter of law.") (internal brackets omitted).

Past that, it takes a gigantic leap—one much too far—to infer that Appvion's financial projection history provided knowledge to Argent that officers and directors had breached their fiduciary duty. Past is not necessarily prologue; that Appvion missed a financial target one year does not mean it will miss the target the following year. But that aside, the Second Revised Amended Complaint alleges that Argent and Stout did, in fact, consider the projection history and did "adjust for assessed riskiness" related to Appvion's projections. (SAC ¶ 413.) So even Plaintiff acknowledges that Argent considered and addressed this in a way that would have *lowered* the stock price. That this allegation appears in Plaintiff's complaint alleging that Argent aided other

defendants by inflating the share price shows the implausible nature of the Second Revised Amended Complaint.[8]

In addition to failing to allege scienter and knowledge, Plaintiff also fails to allege that Argent provided substantial assistance to the alleged torfeasors by providing trustee services, including stock valuation, to the Appvion ESOP. Courts routinely hold that a professional services firm—like a valuation company, an accountant, or a trust company—does not provide needed assistance to the underlying tortfeasor where, as here, the service provider "'had no authority to influence the affairs of the primary tortfeasor and had the [service provider] quit upon learning the primary tortfeasor's irregular financial practices, [the primary tortfeasor] could simply have hired a less astute accountant or bookkeeper.'" *McFall v. Stacy & Witbeck, Inc.*, No. 14-cv-04150-JSC, 2016 WL 6248882, 2016 U.S. Dist. LEXIS 148399, at \*22 (N.D. Cal. Oct. 26, 2016) (quoting *Mendelsohn v. Capital Underwriters, Inc*., 490 F. Supp. 1069, 1084 (N.D. Cal. 1979)); *see also Zayed v. Associated Bank, N.A*., 779 F.3d 727, 735 (8th Cir. 2015) ("In addressing aiding and abetting liability in cases involving professionals, most courts have recognized that 'substantial assistance' means something more than the provision of routine professional services.") (citations omitted); *Lawrence v. Bank of Am., N.A*., 455 F. App'x 904, 907 (11th Cir. 2012) (same); *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 323 (Del. Ch. 2015) (same).

The well-known pleading standards of *Twombly* and *Iqbal* require more than the threadbare "aiding and abetting" facts in the Second Revised Amended Complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Plaintiff's

---

[8] Moreover, "'that a company is [misstating its financial status] does not necessarily mean that the company's principals are looting it . . . *[S]uspicion and surmise do not constitute actual knowledge*.'" *McFall v. Stacy & Witbeck, Inc.*, No. 14-cv-04150-JSC, 2016 WL 6248882, 2016 U.S. Dist. LEXIS 148399, at \*20 (N.D. Cal. Oct. 26, 2016) (emphasis in original) (quoting *In re Sharp Int'l Corp.*, 281 B.R. 506, 515 (Bankr. E.D.N.Y. 2002)) (dismissing aiding and abetting claims against valuation advisor).

aiding and abetting claim against Argent should therefore be dismissed on this alternative ground.

### C. Joinder to Arguments of Co-Defendants

To the extent the Former D&O Defendants prevail on their motion to dismiss the breach of fiduciary duty claims against them (Counts I-IV), then the aiding and abetting claim against Argent must also be dismissed. Aiding and abetting claims are derivative, depending on the establishment of an underlying tort. *See, e.g., In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014) (collecting cases). The dismissal of the tort claims against the Former D&O Defendants also compels the dismissal of the aiding and abetting claim against Argent.

## IV. CONCLUSION

For the foregoing reasons, the sole claim against Argent Trust Company (Count V) should be dismissed.

Dated: December 16, 2019

By: */s/ William P. McKinley*
    William P. McKinley SBN # 1072959
    MENN LAW FIRM, LTD.
    2501 E. Enterprise Ave.
    Appleton, Wisconsin 54912
    Email: William-Mckinley@mennlaw.com
    Tel: (920) 731-6631
    Fax (920) 560 4757

                -and-

By: */s/ Michael L. Scheier*
    Michael L. Scheier
    Brian P. Muething
    Jacob D. Rhode
    KEATING MUETHING & KLEKAMP PLL
    One East Fourth Street, Suite No. 1400
    Cincinnati, Ohio 45202
    Email: mscheier@kmklaw.com
           bmuething@kmklaw.com
           jrhode@kmklaw.com
    Tel: (513) 579-6400
    Fax: (513) 579-6457

    *Counsel for Argent Trust Company*

## CERTIFICATE OF SERVICE

I certify that on December 16, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_/s/ Michael L. Scheier_