UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALAN D. HALPERIN and
EUGENE I. DAVIS,

        Plaintiffs,

        v.                                     Case No. 19-C-1561

MARK R. RICHARDS, et al.,

        Defendants.

**DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

      In late 2001, the employees of Appvion, Inc. contributed nearly $107 million from their 401(k) retirement accounts to an employee stock ownership plan (ESOP), which was used to purchase all of the common stock of Paperweight Development Corporation (PDC). PDC then used the employee contributions, along with other financing, to purchase Appvion from its parent company, Arjo Wiggins Appleton. On October 1, 2017, some 16 years later, Appvion filed voluntary petitions for relief under Chapter 11. Under the Chapter 11 Plan of Liquidation, Plaintiffs were given authority to pursue certain causes of action on behalf of the estate. Plaintiffs commenced an adversary proceeding in the U.S. Bankruptcy Court for the District of Delaware on November 30, 2018, for the benefit of certain Appvion creditors, against a number of former Directors and Officers of Appvion Inc.; Argent Trust Company, which served as the trustee of the ESOP from 2014 to 2017; and Stout Risius Ross, Inc. and Stout Risius Ross, LLC (Stout), which provided stock valuations from 2014 to 2017.

      The complaint alleged that the Director and Officer Defendants breached their fiduciary duties (Counts I through III); that the ESOP Committee Members, Argent, and Stout aided and

abetted the Director and Officer Defendants in breaching their fiduciary duties (Counts IV through VI); and that certain Director and Officer Defendants received illegal dividends in violation of Delaware state law (Counts VII and VIII). The complaint also asserted avoidance actions against certain Director and Officer Defendants, Stout, and Argent (Counts IX through XVIII). Plaintiffs filed a first amended complaint on February 19, 2019. On March 19, 2019, the Director and Officer Defendants and Argent filed motions to dismiss. Plaintiffs filed a Second Amended Complaint and then a Revised Second Amended Complaint. The parties stipulated that the motions to dismiss had equal applicability to the Revised Second Amended Complaint. On October 23, 2019, the U.S. Bankruptcy Court for the District of Delaware ordered that the venue of Counts I through VIII be transferred to this court.

This matter comes before the court on the defendants' motions to dismiss. The defendants assert that Plaintiffs' state law claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* For the reasons that follow, the defendants' motions to dismiss will be granted and the case will be dismissed.

## LEGAL STANDARD

A motion to dismiss tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of

what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## BACKGROUND

Prior to 2001, Appvion, or as it was then known, Appleton Papers, Inc., offered its employees a traditional Section 401(k) retirement plan. In late 2001, the employees of Appvion contributed nearly $107 million of their retirement accounts to an ERISA-governed employee stock ownership plan (ESOP) to be used to purchase all of the common stock of Paperweight Development Corporation (PDC). PDC then purchased Appvion from its parent company, Arjo Wiggins Appleton, and Appvion employees continued to use their tax-deferred retirement savings to purchase additional stock throughout their employment. Upon an employee participant's retirement, the ESOP would repurchase the participant's PDC common stock at fair market value. On May 28, 2014, Argent became the ESOP's trustee and was supervised by the ESOP Committee. As the trustee, Argent was to determine the fair market value of PDC common stock, among other duties. Argent hired Stout to make the fair market value determination.

Plaintiffs allege that the ESOP frequently did not have sufficient cash from employee contributions to cover the cost of ESOP distributions to employee participants, so the ESOP borrowed money from PDC. Compl. ¶ 115, Dkt. No. 2. PDC, in turn, borrowed funds from Appvion to meet the ESOP's repurchase obligations, and Appvion borrowed money from its lenders to fund its loans to PDC. *Id.* ¶ 116. Of course, Appvion also had other financial obligations

3

and commitments. In October 2017, Appvion filed voluntary petitions for relief under Chapter 11. Plaintiffs claim that this "litigation involves harmful and destructive manipulation of [Appvion's] corporate enterprise by certain . . . directors and officers, and the advisers they engaged to oversee and administer the core functions of the Appvion, Inc. Savings and Employee Stock Ownership Plan." *Id.* ¶ 1. Plaintiffs assert that "hundreds of millions of dollars of creditor claims against Appvion and Paperweight Development Corp. have gone unpaid." Pl.'s Br. at 10, Dkt. No. 28.

## ANALYSIS

The defendants assert that Plaintiffs' claims are preempted by ERISA's conflict preemption provision, Section 514 of ERISA, 29 U.S.C. § 1144(a). The purpose of ERISA preemption is to ensure uniformity of benefit law and protect the interests of plan beneficiaries. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). "To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* (quotation marks and citations omitted). ERISA has two distinct preemption provisions: complete preemption under ERISA § 502 and conflict preemption under ERISA § 514. The parties agree that claims in this case raise questions concerning conflict preemption.

Section 514 states that ERISA "shall supersede any and all State laws insofar as they may . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). Although the Supreme Court has rejected "uncritical literalism" in applying this section, *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016), it has "long acknowledged that ERISA's pre-emption provision is 'clearly expansive.'" *Cal. Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 324 (1997) (noting that the preemption provision has "a 'broad scope,' and an 'expansive sweep;' and it is 'broadly worded,' 'deliberately expansive,' and 'conspicuous for its breadth.'"

4

(citations and alterations omitted)). The Court has found that a law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983). Applying these principles, the Court has described two categories of state laws that ERISA preempts:

> First, ERISA pre-empts a state law if it has a "reference to" ERISA plans. To be more precise, where a State's law acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation, that "reference" will result in pre-emption. Second, ERISA pre-empts a state law that has an impermissible "connection with" ERISA plans, meaning a state law that governs a central matter of plan administration or interferes with nationally uniform plan administration. A state law also might have an impermissible connection with ERISA plans if acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.

*Gobeille*, 136 S. Ct. at 943 (internal quotation marks, citations, and alterations omitted).

As an initial matter, Plaintiffs assert that ERISA only preempts claims brought by plaintiffs who have standing to sue under ERISA. Only plan participants, plan beneficiaries, plan fiduciaries, and the Secretary of Labor have standing to pursue ERISA claims. *See* 29 U.S.C. § 1132(a)(3). There is no dispute that Plaintiffs lack standing to sue under ERISA since they are not plan participants, beneficiaries, or fiduciaries. Plaintiffs maintain that, if ERISA is found to preempt their state law claims, they would not have an avenue to redress their injuries.

The Seventh Circuit has held that "the availability of a federal remedy is not a prerequisite for federal preemption." *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir. 1989); *see also Rice v. Panchal*, 65 F.3d 637, 641 (7th Cir. 1995) (noting that ERISA "displaces state claims that it does not necessarily replace with federal claims" (citation omitted)). Congress intended for ERISA to provide the exclusive means of obtaining redress for matters relating to benefit plans, and ERISA's goal was to "ensure that plans and plan sponsors would be subject to a uniform body of benefits law." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990). The goal of uniformity and

5

predictability would be undermined if plaintiffs are permitted to obtain remedies under state law that Congress rejected in ERISA. In short, ERISA may preempt a plaintiff's state law claim regardless of whether ERISA provides an avenue for the plaintiff to obtain relief. Indeed, ERISA preemption turns on whether a plaintiff asserts a claim that is grounded in duties arising out of ERISA, not whether the plaintiff has statutory standing to assert a claim under ERISA. The court therefore rejects Plaintiffs' assertion that their claims are not preempted merely because they cannot obtain relief under ERISA and now turns to whether Plaintiffs' claims are preempted.

The Director and Officer Defendants assert that ERISA preempts Plaintiffs' claims against them because those claims relate to and depend on the Appvion ESOP, which is an ERISA-governed plan. *See* 29 U.S.C. § 1002(34). Plaintiffs assert that they are pleading their claims based on the corporate fiduciary duties owed by directors and officers to their companies in general, not on the Director and Officer Defendants' ERISA-based fiduciary duties. Citing *Barry v. Trustees of the International Association Full-Time Salaried Officers and Employees of Outside Local Unions and District Counsel's (Iron Workers) Pension Plan*, 404 F. Supp. 2d 145, 151 (D.D.C. 2005), Plaintiffs assert that, because ERISA acknowledges "that individuals may be both ERISA plan fiduciaries and officers or other employees in a corporation," their separate fiduciary obligations imposed under ERISA are irrelevant to Plaintiffs' claims of breaches of corporate fiduciary duties. Pls.' Br. at 28, Dkt. No. 28. Recognizing that not every business decision of an individual who is both a plan administrator and an employer will implicate the individual's ERISA fiduciary obligations, ERISA imposes fiduciary obligations only when an individual "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21).

6

In this case, Plaintiffs' allegations relate to the Director and Officer Defendants' management or administration of the ESOP and the alleged breaches of their ERISA-governed fiduciary duties and obligations. Plaintiffs allege that the Director and Officer Defendants "artificially and materially inflated" the value of the PDC stock by intentionally providing inaccurate information to the ESOP's valuation firms, they knew that the stock was being over valued but did nothing to stop it, and they improperly forgave intercompany debt and borrowed money from Appvion to fund the ESOP's repurchase obligations. Compl. ¶¶ 1, 3–8, 113–20, 393–95, 400–01, 404, 409, 422–25, 431–33. ERISA imposes specific duties on ESOP fiduciaries regarding stock valuations and requires that fiduciaries monitor and fund repurchase obligations as set out in the plan's governing documents. *See Keach v. U.S. Tr. Co.*, 419 F.3d 626, 636–37 (7th Cir. 2005) ("A fiduciary must investigate the expert's qualifications, provide the expert with complete and accurate information, and make certain that reliance on the expert's advice is reasonably justified under the circumstances."); *see also Fish v. GreatBanc Tr. Co.*, No. 09-cv-1668, 2016 WL 5923448, at *14 (N.D. Ill. Sept. 1, 2016). The Director and Officer Defendants' duties are not independent of ERISA, as they are based on obligations under the ESOP, an ERISA-governed plan, and would not exist absent the plan. Plaintiffs' claims are grounded in the Director and Officer Defendants' ERISA-related duties, not their general corporate duties, and "relate to" the ESOP. Therefore, ERISA preempts Plaintiffs' claims against the Director and Officer Defendants.

Argent and Stout assert that the aiding and abetting claims against them also "relate to" the ESOP and are thus preempted by ERISA because Plaintiffs' claims are based on their performance of their plan-related duties. Plaintiffs claim that Argent and Stout aided and abetted the Director and Officer Defendants' breaches of fiduciary duties. Compl. ¶¶ 414, 418. Plaintiffs' claims

7

against Argent and Stout are premised on the existence of the ERISA plan and relate to the plan's administration. In their complaint, Plaintiffs challenge Argent's conduct in discharging its duties as the ESOP Trustee in determining the fair market value of PDC's common stock. *Id.* ¶ 113. Argent's duties as the ESOP Trustee are governed by ERISA and are central to the plan's administration. Argent engaged Stout as an independent appraiser to prepare fair market value determinations of the plan's stock holdings, an ERISA plan–required function that was crucial to the ESOP's administration. *See id.* ¶¶ 10, 112. Plaintiffs' claims of aiding and abetting, at their cores, are premised on errors in administering an ERISA plan. Because Plaintiffs' claims against Argent and Stout are predicated on conduct governed by ERISA, those claims are preempted and must be dismissed.

## CONCLUSION

For these reasons, the defendants' motions to dismiss are **GRANTED**. Plaintiffs' state law claims against the defendants are dismissed as preempted by ERISA. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of August, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge